RUSSELL'S EXPRESS, INCORPORATED, *vs.* BRAY'S GARAGE, INCORPORATED.

Third Judicial District, New Haven, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

In accepting an automobile for repairs, a garage company, in the absence of any agreement to the contrary, undertakes to do, or at least to be responsible for, the entire job; and therefore is liable in damages for the negligent welding of one employed by it to do that particular item of the repairs.

Russell's Express, Inc. *v.* Bray's Garage, Inc.

A garage company necessarily does all its work by employees, and whether they are permanently employed or only for special jobs can make no difference.

It is a rule of bailments for repairs, that unless the contract requires the personal services of the bailee, he may have the work completed by third persons.

The defendant claimed that upon the facts of record the plaintiff did not rely upon the former to do the welding, but merely authorized it, the defendant, to employ a competent welder on the plaintiff's account. *Held* that such contention was not supported by any reasonable construction of the whole situation, or even of the conversation of the parties with reference to the welding.

Reasons of appeal not mentioned in the briefs of either party will be deemed by this court to have been abandoned.

Argued January 20th—decided April 17th, 1920.

ACTION to recover damages for injury to the plaintiff's automobile-truck, alleged to have been caused by the defendant's negligent and insufficient repair, brought to and tried by the Court of Common Pleas in Fairfield County, *Walsh, J.;* facts found and judgment rendered for the plaintiff for $400, and appeal by the defendant. *No error.*

A motor-truck of the plaintiff broke down in Bridgeport and was towed to defendant's garage. Plaintiff was engaged in the trucking business in New York, and one Russell, its president and treasurer, telephoned to the defendant to take down the motor. Defendant was a garage company in Bridgeport, and was represented by one Bray. Russell and Bray examined the motor and found that a connecting rod had broken and cracked the lower part of the crank case. Bray represented himself as an automobile mechanic with a knowledge of welding, and he and Russell, who also was familiar with automobiles, agreed that a good job could be done upon the case by welding. Other repairs had to be made besides the welding. Russell asked Bray if he had a good welder in Bridgeport and Bray replied he had as good as there was, whereupon Russell

told him to go ahead and have it done. Russell knew the defendant did not itself do welding. The defendant proceeded with repairs and sent the crank case to a competent welder, the Cave Welding Company, for welding. After this was done, the defendant, in setting up the motor, found the upper case cracked. The plaintiff instructed the defendant to have this case welded. This was done by the same welder. Upon its return the welded case was examined by the defendant and accepted. The motor was then set up. Russell came and the defendant turned over the car to him, assuring him that the car was then in first class condition, and ready to make the trip to New York. Russell did not see the crank case after it was welded, relying entirely upon the defendant. There were two cracks, the larger nearly vertical, and the smaller crossing the larger diagonally. The larger crack was properly welded with iron. The smaller was not welded with iron, but was improperly, negligently and carelessly welded with solder. The defendant's bill for repairs amounted to $250, in which was an item of $18.50 paid to the welder. On the way back to New York the soldered crack opened and let out the lubricating oil, the bearings became heated, in consequence of which further repairs had to be made, and the plaintiff lost the use of the car for ten days. The court came to the following conclusions:—

"1. The welding of said diagonal crack was done in a negligent, careless and improper manner, and was the direct cause of the disablement of the truck near Stamford and the subsequent loss to the plaintiff for the repairing of the same and the hiring of the substitute truck.

"2. The plaintiff relied entirely upon the defendant to see that said repairs were properly done, and had no dealings with any other person."

Judgment was rendered for the plaintiff to recover for the cost of repairs and loss of use up to the limit of the *ad damnum*, from which the defendant appealed.

*Thomas M. Cullinan,* for the appellant (defendant).

*Matthew H. Kenealy,* for the appellee (plaintiff).

GAGER, J.    The essential reason of appeal, stated in several ways, is that the defendant was not employed by the plaintiff to do the welding but only to employ a competent welder for the plaintiff, so that the welder was, through the agency of the defendant, acting for the plaintiff as principal and not for the defendant, and therefore, the defendant having employed a competent welder, is not responsible for the results of negligent welding.    The conclusion of the court was that "the plaintiff relied entirely upon the defendant to see that said repairs were properly done, and had no dealings with any other person."    We think this conclusion is not merely justified by the subordinate facts, but that it is clearly required.    It appears that defendant conducted a general repair garage.    It did not do welding, but had what it believed a competent welder to whom welding jobs were turned over.    When a garage takes a repair job, and the contrary does not appear, so far as the customer is concerned, it undertakes for itself the whole job.    Whether the garage does all the work is quite immaterial.    Should the job require work to be done outside the capacity of its shop, as that of a carriage maker, painter, glass-cutter, the garage gets the work done on its own account, being equally responsible to the customer whether the work is done by its immediate employees or by specialists in the different lines of work required to be done.    The garage company necessarily does all its

work by employees, and whether they are permanently employed or only for special jobs can make no difference.

The defendant, while not directly dissenting from this proposition, claims that upon the facts disclosed the plaintiff, by the special terms of the contract, did not rely upon the defendant for the welding, but authorized the defendant to employ a welder to do the work for and on account of the plaintiff and not the defendant. It appears that apart from the general circumstances and situation, all that bears on this is a very brief conversation between Russell and Bray, incorporated in the finding. After agreeing that the crack should be welded, Russell, knowing that the defendant did not itself do welding, asked Bray if he had a good welder in Bridgeport, and Bray replied that he had as good as there was, whereupon Russell told Bray to go ahead and have it done. The defendant claims that this conversation amounted to a direction to Bray to hire the welder upon the plaintiff's account.

That is not, upon the whole situation or even on this conversation alone, a reasonable construction. The truck was at Bray's for whatever repairs were necessary. All that the plaintiff was after was a good job. The inquiry meant no more than would have been meant by the inquiry, "Have you good mechanics to do the work required on this job?" This is shown by the bill for $250, out of which only $18.50 was for welding. Welding was a job requiring, apparently, special skill and tools outside the ordinary garage equipment. Before turning over the job to the defendant, Russell wished to assure himself that the work would be properly done, and therefore inquired of Bray as to the welder he employed. Bray's answer apparently meant, and was intended and understood to mean, that defendant could get the work

done by one possessing proper skill and equipment. It was the defendant who was to get the work done, and not the plaintiff through the agency of the defendant. The plaintiff did not ask the name of the welder, and the defendant in its itemized bill charged simply "Cave welding" as an expense item of its own, and not as a charge of the welder to the plaintiff. The plaintiff's only inquiry and only interest related to the quality of the work the defendant would do. There is no question of agency disclosed or undisclosed. The contract between plaintiff and defendant was one of bailment for repairs, *locatio operis faciendi*, to use the older nomenclature. The defendant was bailee of this truck to put it in good repair, welding included. Its duty was to use ordinary care, not merely to select competent employees, as defendant claims, but to do the work required with ordinary skill and judgment. It is said that in this class of bailments "ordinary care " is a term of intense relativity. The bailee promises the skill of his art. In such a contract the bailee may use the usual means of executing the bailment. *Firemen's Fund Ins. Co.* v. *Schreiber*, 150 Wis. 42, 135 N. W. 507; 45 L. R. A. (N. S.) 314. Also Dobie on Bailments & Carriers, § 65; 6 Corpus Juris, p. 1124, § 62; Schouler on Bailments (3d Ed.) § 101. It is also a rule of such bailments, that unless the contract requires the personal services of the bailee, he may have the work completed by third persons. Dobie, *supra*, § 66; citing 1 Halsbury, Laws of England, p. 560. In a note Dobie says: "Frequently the size and variety of the work . . . would conclusively show that the bailee could not personally perform all the services himself, but must delegate it in whole or part to others for whose work, while acting within the scope of their employment, the bailee is, of course, responsible." That is exactly the

present case. The court having found that the welding by solder and not iron was negligent, careless and improper, the law as to negligence in the performance of the contract of bailment for repair applies, and the defendant is liable for the negligent soldering as much as though it had been done in its own shop by its regular employees. It is liable not because of any misrepresentations of the defendant in turning the car over to the plaintiff, but because the work undertaken to be done by the defendant was in fact negligently, carelessly and improperly done. This disposes of the reasons of appeal founded on the claimed agency of the defendant.

Certain reasons of appeal relate to the measure of damages. As they are not mentioned in the briefs of either party, we assume they have been abandoned. The claims as to correction of the finding are immaterial, as the decisive facts have been fully found in the original finding and the corrections allowed by the court.

There is no error.

In this opinion the other judges concurred.