**AETNA CASUALTY & SURETY CO., Plaintiff-Appellant, v HIGBEE COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20659.   Decided October 13th, 1947.

450

McKeehan, Merrick, Arter & Stewart, Cleveland, for plaintiff-appellant.

Calhoun, McLeod & Fricke, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment for the defendant entered in the trial court. Mrs. Edith Goldsmith delivered her fur coat to the Higbee Company for storage. Several weeks after it received the fur coat from Mrs. Goldsmith, The Higbee Company called her, suggesting that the coat needed repairing. Whereupon Mrs. Goldsmith called at the fur department of the defendant and signed an order for the repairs as follows:

"8-30-44 The Higbee Company. Please make necessary repairs as suggested by your fur department, not exceeding $26.00 in addition to sales tax and the regular storage charges.

(signed) Mrs. W. A. Goldsmith."

The contract for storage of the coat between the Higbee Company and Mrs. Goldsmith placed the value of the coat at $100.00 which amount was determined by her. The contract provided that the charges for the storage should be determined on such valuation and that the company's liability in case of loss or damage should not be greater than that amount.

The defendant, The Higbee Company, in carrying out the order of Mrs. Goldsmith to repair and clean the coat and without obtaining her consent, delivered the coat to The New Process Fur Cleaning Company to be cleaned and while in the cleaning company's possession was stolen by armed highwaymen.

The Higbee Company then paid Mrs. Goldsmith $100.00 claiming that to be the limit of their liability under the bailment contract.

The plaintiff, Aetna Casualty & Surety Company had prior to the date of the loss, issued a policy of insurance to Mrs. Goldsmith by which the fur coat was insured against loss by theft in the sum of $1000.00. The plaintiff, therefore, paid Mrs. Goldsmith $1000.00 and received from her a subrogation receipt by which she assigned to plaintiff all her rights against The Higbee Company because of the loss of the fur coat, to the extent of $1000.00 and released the Higbee Company from any further claim in excess of that amount.

The trial court found that although the defendant's conduct in sending the coat to the cleaning company constituted a conversion of it, the defendant's liability was limited by the bailment contract to $100.00 and having paid that amount to Mrs. Goldsmith had discharged its full duty to her and therefore found for the defendant.

It is the claim of the plaintiff:

1. That the delivery of the coat to the New Process Fur Company constituted conversion.

2. That the limitation of value contained in the contract of bailment does not protect the defendant from the full amount of the damages sustained where it is guilty of conversion.

An examination of the record discloses that the defendant did not directly notify Mrs. Goldsmith that they proposed to send the coat to another company for the purpose of having it cleaned. She testified that she presumed that they would do all of the work although nothing was said about it. Quoting from her testimony, she said:

"As far as I know, I gave Higbee's the job to do and it was Higbee's job."

The defendant attempted to offer evidence to establish a "custom" in this community that retail fur dealers and fur departments of department stores for the most part send out to others the work of cleaning fur and that such custom is well known to the people of the community so that when a customer contracts with a retail dealer with respect to the repair and cleaning of articles made of fur, the contract is made with knowledge of such custom and the customer thereby is impliedly presumed to consent to such means of accomplishing the work contracted to be done by the bailee. The court sustained the plaintiff's objection to such testimony. In this the court committed prejudicial error.

The rule to be applied when a custom is claimed as a means of interpreting the contract between a bailor and a bailee is well stated in 55 American Jurisprudence, 282, §21:

"In addition to the important requisites heretofore noted, it is almost universally required in order to hold a person bound by an alleged custom or usage, that he have either actual or implied knowledge of such custom; if it does not appear that he had actual knowledge of it, the custom or usage should be one so general that he will be presumed to have knowledge of it."

"* * * Also in §22 on page 283 it is also stated:—

"Sec. 22: The element of knowledge is particularly applicable to usages and customs alleged to create or affect contractual obligations. To be thus available, the custom or usage must be so well established, notorious, general or universal in its application as reasonably to induce the belief of a party's knowledge of it and to raise the presumption that he dealt with reference to it or he must be shown to have had actual knowledge of the practice if nothing is said to the contrary. To be regarded as part of a contract, a usage or custom must be actually or constructively known, and must be consistent with a contract. * * * "

Whether or not the defendant could sublet to a third person the work of cleaning the fur coat of Mrs. Goldsmith depends entirely upon the proper interpretation of the contract she made with the Higbee Company when considered in the light of the surrounding circumstances and the defendant should have been permitted to introduce such evidence as was available and relevant, tending to establish their contention as to the terms of such bailment contract.

It is also the contention of the defendant that even though actual consent on the part of the bailor, that a part of the work called for by the bailment contract could be sublet, was not established or that by custom such consent was presumed, the bailee had the legal right to accomplish the purposes stipulated in the contract by any means reasonably suited for such purposes, and if they desired to do so they could sublet a part of the work, and no liability would result from such sub-letting even though the article bailed was lost while in the hands of the sub-contractor, so long as they and the sub-contractor used ordinary care, diligence and skill in carrying out the contract, unless the personal services of the bailee were actually contracted for by the bailment agree-

ment. They rely strongly, in attempting to support this theory, on the cases of Rourke v Cadillac Automobile Co., 268 Mass. 7, 167 N. E. 231, and Travelers Fire Ins. Co. v Brook, 85 P. (2d) 905 (Retrial, 118 Pac. (2d) 25).

In the Rourke case, the plaintiff left his automobile with the defendant for repairs and painting. The defendant without notifying the plaintiff, sent the automobile to the S. Paint Shop for that part of the work. While there the automobile was damaged by fire. Action was brought on two causes of action. The first for negligence and the other for conversion. The court held that upon the evidence, a verdict for the defendant on the first cause should be sustained but that it was error for the court to direct a verdict for the defendant on the second cause of action because the question of whether there was a conversion was a question of fact to be submitted to the jury under proper instructions. In the opinion the court said at page 232 (N. E. Rep.):

"* * * Seemingly there is no wrongful assumption of contract by a bailee to whom articles are sent for repair in placing them with another person to do some or all of the work undertaken by the bailee; Eaton v Lynde, 15 Mass. 242; Howingsworth v Dow, 19 Pick, 228; Zeck v Meister, 1 Camp 138; Storey on Bailments, 9th Ed. §428; unless expressly or by implication there is an understanding that the bailee himself should perform all the work."

In commenting on this case in 28 Mich. Law Review, 196, the author said:

"* * * If it is the owner's right to say who shall paint his vehicle; if the bailee presumes to exercise that right, unless permitted by the bailment contract, it is an exercise of dominion over the property inconsistent with the right of the owner and therefore a conversion. Laverty v Snethen, 68 N. Y. 522; Stanley v Colony Union Gin Co., (Tex. 1914) 163 S. W. 381; Boldewahn v Schmidt, 89 Wis. 444, 62 N. W. 177. Defendant would then be liable for damages occasioned to the automobile while in the possession of S, no matter from what cause and entirely regardless of the question of negligence. Freyer v Cooper (S. D. 1928) 220 N. W. 486. As a general rule it is sufficient if the 'bailee does the work by the means of other persons or sub-agents, if the work be such as may ordinarily be done by others in an equally satisfactory manner.' But when the work is such that the talent and skill of the particular bailee may fairly be presumed to be contracted for 'he is not

allowed to substitute another person without the consent of the bailor.' Storey, Bailments 8th Ed. §428, page 366, Russel Express v Brays Garage, 94 Conn. 520, 109 Atl. 722. In the instant case it was the province of the jury to find, if such were the evidence, that the contract of bailment contemplated performance of all the work by the defendant. Good v Harris, 207 Ala. 357, 92 So. 546; Dolphin v Davis, 183 Ill. App. 118. It was improper, therefore, to hold as the lower court did, that as a matter of law defendant was not guilty of conversion in sending the car to S."

This case does not, therefore, fully support the defendant's theory.

In the case of Dolphin v Davis, supra, the plaintiff left a fur cape with defendant to have a muff and collarette made therefrom. The defendant sent the cape to another to do the work and while in the possession of such third party it was stolen. The court in the first paragraph of the syllabus said:

"Where a fur manufacturer is entrusted with a fur cape out of which he agrees to make a muff and collarette but sends the cape to a third person to do the work, and the cape is stolen from the store of such third person, held, that the manufacturer was liable for conversion. See also, Wilberg v Duluth Auto Supply Co., 146 Minn. 29."

There is no legal presumption that a bailee has the right to sublet the work to be accomplished by a bailment contract unless the bailor specifically requests the personal services of the bailee. It is a question of fact in each case to determine whether or not the personal services of the bailee are contracted for, taking into consideration the character and value of the article, whether the work to be accomplished involves the personal satisfaction of the bailor and all of the other surrounding circumstances.

We come now to a determination of whether or not the limitation of liability provided for by the contract is to be applied where it has been established that the defendant was guilty of conversion.

The limitation of liability as provided for in the contract between Mrs. Goldsmith and The Higbee Company was only for damages that might be sustained in carrying out the terms of the contract and not where the damage claimed is for the value of the property in an action for conversion. Conversion is the wrongful appropriation of the goods of another and is accomplished by exercising dominion and authority

over the property of another inconsistent with the owner's
rights. Where a bailee converts to his own purposes the
property of a bailor, the bailor may treat the bailment con-
tract as terminated and bring action for the value of the
goods taken. Such action is not founded upon the provision
of the bailment contract but rather is based on the tortuous
conduct of the defendant and the measure of damages is
the value of the goods taken.

The supreme court had this question for consideration
in the case of **Conkle v G. K. Scott, Inc., 147 Oh St 487.** The
plaintiff had stored certain household furniture with one Lloyd
McMillan who subsequently stored it with the defendant. The
plaintiff paid McMillan for the storage but McMillan failed to
pay the defendant. The defendant thereupon without comply-
ing with the provisions of §8489 GC, sold the property for
$45.00. Sec. 8489 GC provides for the manner in which a ware-
houseman may satisfy his lien for storage which among other
provisions requires written notice to the person on whose
account the goods are stored. The provisions of the ware-
house receipt had a limitation of liability as to each package
or piece of property stored. The court held:

"A provision in warehouseman's receipt limiting his lia-
bility in case of loss or damage connotes negligence and is
not applicable in an action predicated on intentional, wilful
misconduct."

The court in this case distinguishes the principle of law
applicable when the loss or damages is caused by the negli-
gent conduct of the warehouseman (**Warehouse Co. v Packer-
ing, 114 Oh St 76**) and cases where the warehouseman's act
causing the damage is wrongful. On page 490 of the opinion
the court, after quoting from the Packering case says:

"It is readily apparent that that pronouncement does not
involve a wrong that is inflicted intentionally and wilfully as
in the instant case."

Conversion is the wrongful assuming of unauthorized
control over the personal property of another, whether it is
done purposely or not. In the case of Gulbranson v Chaseburg
State Bank, 236 Wis. 391—295 N. W. 729 (1941) it was held that
if a person entrusts another with goods for the accomplish-
ment of a particular purpose and such bailee puts them into
the hands of a third person contrary to orders, it is a conver-
sion and wrongful intent is not essential, it being sufficient

if the owner has been deprived of his property by the act of another assuming an unauthorized control over it. If a wrongful act is intentionally done by a bailee with regard to the subject of the bailment it matters not that it was done with a mistaken notion of the bailee that he was acting within his legal right.

If, therefore, the plaintiff is able to establish by the proper degree of proof, that the defendant was guilty of conversion in sending the coat to an outside cleaner where it was lost, the $100.00 limitation of liability would not apply.

One other consideration must be given to the facts as applicable to the limitation of liability contained in the storage contract between The Higbee Company and Mrs. Goldsmith. The storage contract was concluded on May 16, 1944, the coat having been delivered to them on May 2, 1944. The contract of storage of May 16, 1944, wherein defendant agreed to store the coat for $2.00 contained the limitation of liability of $100.00 **for each article stored.** Subsequent to the date of this contract, to-wit, August 30, 1944, for the consideration of not to exceed $26.00, The Higbee Company agreed to make certain repairs and to clean the said coat which charge was to be in addition "to sales tax and the regular storage charge." The evidence therefore tends to establish that the contract for repairs was a new contract entered into entirely independent of the contract for storage. It was in the performance of this contract that The Higbee Company delivered the coat to the New Process Fur Cleaning Company from whose possession it was stolen. It seems, therefore, if it be established that the contract for repairs was separate and distinct from the storage contract, then the limitation of liability had no application to such contract for repairs.

The judgment of the trial court is therefore reversed and the cause is remanded for further proceedings according to law for the reason that the defendant was prevented from introducing evidence on the question as to whether or not there is a custom in this community with regard to the method by which fur dealers accomplish the dry cleaning of customer's fur garments through the agency of a sub-contractor, and if there be such custom, whether or not it was expressly or impliedly known to the plaintiff's assignor, and the contract of bailment entered into with regard to such undertaking, and further for the reason that the question of whether or not defendant's conduct in sending Mrs. Goldsmith's fur coat to a sub-contractor for cleaning constituted a conversion is a question of fact to be determined by a proper consideration of all

the competent evidence and if such act constituted a conversion then, as a matter of law, the limitation of liability contained in the bailment contract between Mrs. Goldsmith and The Higbee Company would have no application to the rights of Mrs. Goldsmith or this plaintiff in the within action. On the other hand, if the right to accomplish the cleaning of the fur coat by a sub-contractor was within the terms of the contract then such provision as to limitation of liability would apply.

For the foregoing reasons the judgment of the trial court is reversed and the cause remanded for further proceedings according to law. Exceptions noted.

HURD, PJ, and MORGAN, J, concur.