**UNITED STATES FIRE INSURANCE CO., Plaintiff-Appellant, v. PARAMOUNT FUR SERVICE, INC., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24149.   Decided November 21, 1957.

12

McCreary, Hinslea & Ray, for plaintiff-appellant.
Kitchen & Messner, George W. Leyshon, of Counsel, for defendant-appellee.

## OPINION

By SKEEL, PJ.:

This appeal comes to this court on questions of law from a judgment entered on the verdict of a jury in the sum of one dollar against the defendant-appellee in the Common Pleas Court of Cuyahoga County, Ohio. The action is one sounding in negligence.

The petition alleges that the plaintiff's predecessor, an insurance company, authorized to do business in Ohio, insured a fur coat, the property of Betty Bunin, the face amount of the policy being $1800; that Betty Bunin left the coat for summer storage with the Goldman Fur Company in May of 1949. The Goldman Fur Company, in turn, deposited the coat for storage with the defendant. By reason of the negligence of the defendant, as set forth in the petition, and particularly in leaving

its truck in which the fur coat was being returned to the Goldman Fur Company unguarded, unattended and unlocked on the public thoroughfare, it was stolen by persons unknown to the plaintiff. That by reason of the policy of insurance protecting against theft, issued to Betty Bunin, the plaintiff's predecessor was compelled to and did pay her the extent of her loss caused by the theft of her coat in the sum of $1800, and in consideration for which she assigned to the plaintiff an irrevocable power to prosecute this action to collect its loss from the defendant because of defendant's negligence in the premises.

The defendant's answer admits Betty Bunin's ownership of the fur coat; that she delivered it to the Goldman Fur Company for summer storage, placing a value thereon for storage purposes of $100, thereby limiting the liability of the Goldman Fur Company, in case of loss to that sum. It is further alleged that the Goldman Fur Company, as agent for Betty Bunin, stored the coat with the defendant, placing a value thereon of $1.00, whereby its liability for loss was by contract fixed in that amount. The defendant further alleges that pursuant to the bailment contract between this defendant and the Goldman Fur Company, as its bailor, the storage charges were based on the valuation placed thereon by the fur company.

The plaintiff filed, by reply, a general denial of the allegations of defendant's answer that controverted the allegations of its petition.

The facts for the most part are not in great dispute. It is conceded by both plaintiff and defendant that Betty Bunin was the owner of a fur coat which was insured by the plaintiff's predecessor for $1800; that in the Spring of 1949, she deposited the coat with the Goldman Fur Company for cold storage during the summer months. Mrs. Bunin requested her bailee to permit her to store the coat at as low a valuation as she could to avoid being charged for additional insurance during the time the coat was held in storage. The Goldman Fur Company knew the coat was valued at and insured for $1800, because it was its affidavit (as to its value) that enabled Mrs. Bunin to insure the coat with the plaintiff for that amount. They also knew that the value of $100 was being put on the coat for the purpose of avoiding the cost of double insurance while the coat was in storage. There is likewise no dispute but that the Goldman Fur Company entered into a bailment agreement with the defendant to store Mrs. Bunin's coat with it and that the value placed on the coat in this bailment contract was $1.00 and further that such valuation was the basis upon which the charge for the storage service was determined. Such value was also intended to fix the contractual limit of defendant's liability for loss or damage. There is also no dispute but that the coat was stolen from defendant's truck while defendant was attempting to redeliver it to the Goldman Fur Company, the theft taking place when the truck was left unattended on a public street while the driver and his helper were making other deliveries. Nor is there any dispute but that the plaintiff paid Betty Bunin $1800 by reason of its policy of insurance and that the plaintiff was subrogated

to her rights, whatever they may be, against the defendant, which subrogation was evidenced by a subrogation receipt.

The plaintiff claims the following errors:

"1. In instructing the jury that its verdict, if for the plaintiff, should be in a sum not in excess of $100.00 plus interest.

"2. In overruling the motion filed by the plaintiff-appellant for a judgment for $100.00 in its favor non obstante veredicto.

"3. In overruling plaintiff-appellant's motion for a new trial."

It must be admitted that on the face of the record the rights of this plaintiff as against this defendant are circumscribed by and go to the full extent of the rights that could have been prosecuted by Betty Bunin for the loss of her fur coat by the defendant. Such rights were acquired by the subrogation receipt delivered to the plaintiff's predecessor upon the payment of the value of the coat, as its obligation under the policy of insurance required, after proof of loss had been made. The so-called loan receipt presented in the record in no way modified the terms of the subrogation receipt.

The relationship created between Betty Bunin and the Goldman Fur Company by the deposit of her fur coat with the fur company for storage was that of bailor and bailee. It is clear that the bailor desired to pay the minimum cost for storage and not to have added thereto the cost of additional insurance which would result by declaring its full value. The insurance the bailor had already contracted for covered its full value. A bailment contract which limits the liability of the bailee for loss of the bailed property, even for loss occasioned by his negligence, is an enforceable agreement where the parties deal at arms length and the rate to be charged is based on the valuation declared.

The claim that there is evidence to support defendant's allegation that Betty Bunin constituted the Goldman Fur Company her agent to deliver her coat into the custody of the defendant as bailee of the Goldman Fur Company for summer storage, whereby she became a party to such contract, cannot be sustained.

The evidence relied on is as follows:

"Q. Now, when you took this coat over to Mr. Goldman, you testified that you felt he was a reliable and conscientious owner of a fur store?

"A. I did.

"Q. You wanted him to look after and take the proper precautions in the caring of your beaver coat?

"A. I did.

"Q. And you expected that he would use his judgment in so dealing with it and handling it, so that it would be properly cared for?

"A. I do.

"Q. And do anything in his judgment necessary for the proper handling and dealing of the coat?

"A. Yes."

This evidence, when considered in connection with her complete story as shown by the record, falls far short of establishing that she

intended to appoint the fur company (her bailee created by contract) an agent to bind her to a contract which such bailee might make in bailing the coat to a third person to carry out the obligation which the fur company had assumed in its contract with her.

Betty Bunin also testified as follows:

"Q. Now, you also knew at that time that Goldman Furs had no vault there to store furs and that they would have to send it out to a fur storage?

"A. I didn't know that.

"Q. Had you done business before with Mr. Goldman?

"A. The fall before that I brought the coat in and he altered it for me, and he had it, and during the time he was altering it for a period of a couple of weeks, and I would come for a fitting, and when I came for the fitting he always called for someone to bring it out of somewhere, and I would sit there on the lounge and wait for the coat to be brought to me.

"Q. That was in the Old Colonial Arcade?

"A. I believe so; yes.

"Q. And you didn't know that he didn't have cold storage for furs in the Arcade?

"A. No. It was brought out from somewhere, and I would wait until the coat was brought to me."

The denial of this claim of the defendant is also supported by the fact that Betty Bunin's bailment contract (with the fur company) was based on a value for storage purposes of $100, while the bailment contract which the fur company made with the defendant (to which the defendant attempts to establish her consent) was based on a value for storage purposes of $1.00.

A bailment relation is one which is created by an express or an implied contract followed by delivery of the property into the exclusive possession of the bailee. The terms of the agreement, including those which are imposed by implication, must be found from the evidence. A bailment relation requires more than an agreement between the parties. A delivery of the subject matter or property to be bailed must be made before the bailment relationship can come about. The bailment agreement presupposes that when delivery of the property is made to the bailee, that he, as an independent contractor, will carry out the bailment purpose in dealing with the property. So long as the bailee in a mutual benefit bailment acts within and lawfully carries out the bailment purpose, the bailor has no legal right to retake possession of the property without the bailee's consent and to do so without such consent would make the bailor a converter of the property. The relationship of bailor and bailee is one in which the bailor trusts the possession of his property to the bailee for the accomplishment of the bailment purpose. In most cases the bailor seeks out the bailee because of his special skill or ability to accomplish the purpose intended and not for the

purpose of having him select others, by independent contract, to do the work. This must be particularly true where, as here, there is just one thing to be done—that is to safely exercise such competent skills as are necessary to provide cold storage and to protect a valuable fur coat from damage or loss in a reasonable manner during the summer season. Circumstances might arise, because of the nature of the bailment contract, where a bailee, either by his agreement or by custom, would be expected to seek out others to help accomplish the bailment purpose. In cases, however, where the personal dependability or skill of the bailee to accomplish a single purpose is the basis of the relationship, the employment of others, by independent contract, to carry out that bailment purpose, would be an exception to the general rule.

This court, in the case of Aetna Casualty and Surety Co. v. Higbee Co., 80 Oh Ap 437. 76 N E. 2d 404, said in the fourth paragraph of the syllabus:

"4. The bailee, in attempting to establish the right under the bailment contract to deliver the property to a third person to accomplish the bailment purpose, may offer evidence tending to establish a custom in the community by which persons engaging in like business conduct such business in whole or in part through subagents and that such custom or usage was known to the parties expressly or by implication and that the bailment contract was made with reference thereto."

In 28 Michigan Law Review 196. the author, in commenting on the case of Rourke v. Cadillac Automobile Co., 268 Mass., 7. 167 N. E. 231, where the court held that a bailee, unless expressly prohibited from doing so, was authorized to employ others to do some part or all of the work, said:

"It is the owner's right to say who shall paint his vehicle; if the bailee presumes to exercise that right, unless permitted by the bailment contract, it is an exercise of dominion over the property inconsistent with the right of the owner, and therefore a conversion. Laverty v. Snethen, 68 N. Y., 522; Staley v. Colony Union Gin Co. (Tex. 1914), 163 S. W., 381; Boldewahn v. Schmidt, 89 Wis., 444, 62 N. W., 177. Defendant would then be liable for damage occasioned to the automobile while in possession of S, no matter from what cause and entirely regardless of the question of negligence. Fryer v. Cooper (S. D. 1928), 220 N. W., 486. As a general rule, it is sufficient if the 'bailee does the work by the means of other persons, or subagents. if the work be such as may ordinarily be done by others in an equally satisfactory manner.' But where the work is such that the talent and skill of the particular bailee may fairly be presumed to be contracted for, 'he is not allowed to substitute another person, without consent of the bailor.' Story, Bailments (8th Ed.) Section 428, p. 366; Russell's Express v. Bray's Garage, 94 Conn., 520. 109 A.. 722. In the instant case it was in the province of the jury to find. if such were the evidence, that the contract of bailment contemplated performance of all the work by defendant. Goad v. Harris, 207 Ala., 357,

92 So., 546: Dolphin v. Davis, 183 Ill. App., 118. It was improper, therefore, to hold as the lower court did, that as a matter of law defendant was not guilty of conversion in sending the car to S."

The contract between Mrs. Bunin and the Goldman Fur Company does not provide for "farming out" the work to be done by the fur company nor is there a single word of evidence tending to establish a custom known to the parties by which fur storage is generally accomplished by the average fur store by contracting with others for the actual performance of such service. There is likewise no evidence to support the defendant's claim that the Goldman Fur Company was employed to act as the agent of Betty Bunin to select a substitute to actually store her valuable coat.

Without the original bailor's consent to a rebailment of the property, the legal responsibility of the first bailee for the loss of the goods by the sub-bailee would become a very difficult question. Where consent is given, is it the duty of the first bailee only to exercise due care as agent in selecting a suitable person to accomplish the bailment purpose, it being remembered that (as under the pleadings in this case) successive bailment relationships were created by independent express contracts, the parties to each become independent contractors? If the duty just suggested circumscribes its complete obligation to the first bailor, then the first bailee in such bailment would not be concerned with the conduct of the second bailee in carrying out the bailment purpose. This is not the case where the first bailee farms out a part of the work to be accomplished without attempting to rebail the property.

Where the first bailer pays the cost of storage in advance, can a second bailee, holding the goods without the first bailor's consent or approval, express or implied, maintain possession of the goods after the work is finished, claiming a bailee's lien because the first bailee has refused or is unable to pay his obligation to the second bailee? It seems certain that without his consent clearly expressed, an original bailor is not by implication of law, deprived of a direct action as for conversion against his bailee who attempts to assign his bailment responsibility to another by independent contract who causes damage to or loss of the goods and that such second bailee, having no contractual relations with the original bailor, would be liable to him to the full extent for any damage to or loss of the property, irrespective of any limitation of liability in his contract of the first bailor with the first bailee.

The jury, having found for the plaintiff in returning a verdict of $1.00 upon which judgment was entered against the defendant, settled the issue of negligence. The only question remaining, therefore, is that of damage. The court instructed the jury on this subject as follows:

"The measure of damages would be the reasonable value of the fur coat owned by Mrs. Bunin when she placed it with Goldman Fur Company on April 26, 1949 for storage. But in no event can the damages exceed the sum of $100.00, that being the value placed on the fur coat

by Mrs. Bunin when she delivered it to the Goldman Fur Company on April 26, 1949, for storage * * *."

This instruction did not correctly state the law. As before indicated, where one is in possession of an owner's property without the owner's consent, and by virtue of his negligence the property is lost, the one in possession is liable to the owner to the full extent of the damage occasioned by such loss.

There is no dispute in this record as to the true value of the coat at the time it was stolen from the defendant, which loss the plaintiff paid to Betty Bunin.

After verdict and judgment, the plaintiff filed a motion for judgment for $100 and costs non obstante veredicto based on the limitation of liability in the bailment contract between Betty Bunin and the fur company. This court having found that such limitation does not inure to the benefit of the defendant for the reasons stated, the trial court should have sustained the plaintiff's motion and applied the correct rule as to damage.

Since the negligence of the defendant was established by the verdict of the jury and the facts on the subject of damages are not in dispute, this court will proceed to enter the judgment which should have been entered by the trial court against the defendant in the sum of $1800, with interest from the date of the judgment, and costs. Defendant's exceptions will be noted.

HURD, J, KOVACHY, J, concur.